Three cases scheduled this morning for oral argument. Council for the first case has not yet been heard from, so we appreciate your cooperation. We're moving to the second case for now, GCORP International v. AmDocs Incorporated, and then we'll proceed from there to the DeWolf case, and then we'll see where we are on hearing the first case. So, Mr. Masterson. Good morning, Your Honor. My name is Bill Masterson. I represent GCORP International, the appellant in this case. GCORP recruits foreign radio frequency engineers, brings them to the U.S., trains them, handles their visas, and leases them out to large telecommunications companies, like, for example, T-Mobile. So, GCORP has a substantial investment in these engineers and enters into contracts with restrictions that keeps them from working for competitors, although in this case, at least one of the appellees was also a customer, or is also a customer of GCORP. So, the appellees poached the employees of GCORP, and GCORP sued appellees in tort for interference with the GCORP employees' employment and is seeking damages for the loss of their services. Appellees have defended against GCORP's claims with a defense that was recognized by the Texas Supreme Court in the case of Juliet Fowler Holmes in 1990. The appellees argue that GCORP's contracts with the employees are unreasonable restraints of trade and that they cannot be enforced because they're violations of public policy. However, after the Juliet Fowler decision, the Texas legislature added section 15.52 to the Texas Covenants Not to Compete Act, which contains sections 1550, 1551, and 1552, and we believe those are the governing terms of this appeal. Section 15.52 provides that the exclusive remedy for violation of the Covenants Not to Compete Act are the terms of the act, and that these terms preempt any other criteria for enforceability of a contract not to compete. The Covenant Not to Compete Act provides in section 15.51 that if a covenant not to compete is overbroad, which has been found by the trial court in this case, then the trial court, quote, shall reform, quote, the covenant, again, quote, to the extent necessary to make it reasonable and enforceable. That has never been done in this case. The court simply held that the the terms of the contracts were overbroad. Now, Mr. Masterson, is it required that you request timely the reformation of the overbroad provision under the act? No, sir, I don't believe it is. It, uh, section 1551 just says the trial court shall reform the contracts, and once you inform, once you reform the contracts, then the contracts are reasonable, and they're not going to be violations of public policy. Do you agree, then, that the, as written, the non-competes are unreasonable? Uh, are unreasonable? Overbroad, no geographic slope, basically. Uh, well, that's, that's the trial court's holding, but. Yes, but you're arguing that they should be reformed, so are you saying that they're overbroad? Uh, well, if, to the extent they're overbroad, they should be reformed. Now, the principal ground that the trial court found for, uh, for, uh, being overbroad is lack of a geographic, uh, restriction. Okay, so do you agree that there is no geographic restriction to the non-compete? We do not, Your Honor, not in this situation, looking at the facts. These are radio frequency engineers, and they can work in Dallas on a cell tower in New York, so how in the world would you ever come up with any kind of effective, um . . . So you agree that there's no geographic scope? Uh, well, we, we, we don't think that it was necessary. There are Texas cases, and we cite them in our brief, that it's not necessary to, to have a geographic restriction. Okay, tell me your best Texas case for the proposition that a non-compete with no geographic scope is, um, not overbroad? Uh, Your Honor, we did, we did cite those, uh, cases in the, in our brief, and the other side argues that the case is the other way, and there are cases the other way. But, the cases that go the other way, for example, are, you might have a situation where, uh, you, for example, you've got a, a salesman of, uh, uh, ladies' shoes to particular retailers in, in a five-counter county area. Then it makes sense to restrict that, that covenant to that area, but where you've got radio frequency engineers who are working, uh, in, in all kinds of areas from time to time remotely, we don't think it makes, uh, sense. But, assuming, uh, since the trial court found that, uh, the restrictions are, uh, overbroad, then, assuming that they're overbroad, that our position is that, uh, the Texas Act requires that the, uh, trial court come up with reasonable restrictions, and once you do that, these contracts will not be against public policy, and they will not be overbroad. Mr., uh, Mr. Masterson, uh, am I correct that you did not raise the reformation argument in the district court? You, you raised it for the first time on appeal. Is that right? I, I believe that's correct, Your Honor, that because the, uh, the, the, uh, district court held against us both as to, uh, the, the reasonableness of the, uh, of the covenant, and, uh, this being a tort case, these statutes were primarily written for people who were enforcing, uh, these terms, um, uh, as between an employer and an employee. Well, the re, the reason I'm mentioning that is that you may have forfeited the reformation argument by not having presented it in the district court, because in the district court, you were presented with, uh, the, uh, the allegation, uh, from, from Amdocs, uh, that, that the, uh, that the contract was over, overbroad, and you could, you could have raised the reformation argument there in the district court before judgment. Well, the statute does not provide for the time at which the, these, uh, uh, these terms need to be raised, uh, either at, at a particular time. Before they passed the Act, for example, um, you did not have to, if you had a, a contract that was held to be overbroad, you did not need to go plead in equity for a reformation, uh, at, at that point. Um, and that's why they passed the, the Act, was to make all of this, uh, enforceable under the terms of the Act, and they do not require, uh, that, that these, uh, claims be made, uh, that the contract be reformed at any, uh, you know, particular time. And the, the defense here goes back to this Julian Fowler case, which the trial court cites in the opinion, I think it's at page six, and in that, uh, in that opinion, it says that this case, uh, has been superseded on appeal, and sure enough, that is, that is the law, and, uh, we don't think that, that, that case should be, uh, the basis for the decision in this case. So, um, it is true that the, uh . . . Pardon? Let me ask you a question. If your restrictions were, if your, uh, relationship with your employees was restricted to Texas, could you function, or would it destroy your business? No, we could function. Um, we think that would be not appropriate. We don't think that would be appropriate, but yes, we could function with those, uh, uh, restrictions. So, um, what, what we've, uh, ended up with, the other side has, instead of citing the Julian Fowler case, which itself was cited by the trial court as being, having been superseded, the, the, uh, uh, the, the case cited is the, uh, Laser, uh, Spot case, and, uh, instead of the Julian Fowler case, but the Laser Spot case relies on the Julian Fowler case. So, we think that we have been deprived of, uh, valuable statutory, uh, rights in this case, and that, um, if those rights had been, uh, or in the future are, are enforced to make these contracts, uh, to, to, uh, have reasonable restrictions, whatever the court thinks those reasonable restrictions are, then, um, the contracts clearly would not be in violation of public policy and would be, uh, enforceable in this case. So, I think that that's what this case comes down to. It's got a lot of different elements and a lot of different arguments, but the principal, uh, case basis for the case has been superseded by statute and the court has not properly, uh, that's where we think the case stands on appeal, and, uh, we're asking that the court, uh, uh, reverse the trial court and set the case for trial. Thank you. You have saved time for rebuttal. Thank you. Thank you, Mr. Masterson. Mr. Morales-Doyle. Good morning, Your Honors. Patrick Morales-Doyle on behalf of the defendants' appellees. This court should affirm the grant of summary judgment to Amdocs and TTS, which I'll use for telecom technology services. This court should affirm the grant of summary judgment to Amdocs and TTS because they did not tortiously interfere with any G Corp contract or prospective business relationship. This lawsuit is an improper attempt to transform completely innocuous and legitimate business activity, which is one business hiring the former employees of another business into a tort. As the Texas Court of Appeals stated in the Laser Spot case, if the mere hiring of an at-will employee without more were sufficient to support a claim of tortious interference, the economy of the state of Texas would soon grind to a halt. That's just what we have here. TTS had the legal right to hire the employees of its choice and committed no tortious conduct, and therefore, the district court correctly rejected G Corp's efforts to transform that into a tort. For each claim, there are multiple independent bases to affirm the grant of summary judgment for the defendants. Um, so I'll address the tortious interference with contract claim first, and I'll, uh, I'll try not to belabor, but instead, uh, touch on the points raised by counsel during his argument. Um, so firstly, on the reformation, uh, argument, well, I'll just say, initially, I heard no argument here. I didn't really read an argument in their briefs as to why these clauses would not be overbroad. They're facially overbroad, uh, which is why counsel has raised this reformation argument under the statute. Uh, but as some of the questions, uh, from the panel indicated . . . Well, I mean, I, I, I hear, I hear the argument as being that it's a nationwide operation, so it's necessary to have a nationwide scope. That's, that, that's the reason they gave. It's not that they gave no reason. Uh, that's fair, Your Honor, and, uh, unfortunately for plaintiffs, that's not the law in Texas. The telecom industry may be national, uh, but the, to, to be a reasonable, uh, non-compete clause, the geographic scope has to match in some way the geographic scope of where the employees actually worked, and this contained no geographic limitations. Uh, the D'Onofrio, uh, case from this court, uh, states quite clearly that generally, uh, where there's no geographic, uh, limitations, the clauses are unenforceable. Um, there are a handful of cases where clauses were upheld without a geographic limitation, uh, but in those cases, there were other limitations, uh, that basically made up for the lack of a geographic limitation and made the clause reasonable. Here, there are no such limitations that make the clause reasonable. As the district court found, it's not limited to clients that the former employees actually worked with during their time at G Corp, and for the scope of activities it restricts, it amounts to an industry-wide ban, and the plaintiff's principle's testimony sort of emphasized this, that he thought it applied to any telecom company anywhere, no matter if it was a G in the future, in the past, it was, uh, extremely broad. And so, uh, I think on its face, the clauses, uh, are broad, and, and G Corp doesn't even, um, address the, uh, uh, the lack of restrictions on the scope of activity versus the geographic limitations. Either one would make these, these clauses unenforceable. Um, to, to the, to the reformation point, it is forfeited. They did not raise it below. Uh, we've cited cases on page 31 of our brief under, in Texas state cases, finding that this is an issue that has to be raised in the trial court, and for good reason, you're asking a court to rewrite the party's contract. Um, but just under basic, uh, forfeiture principles in federal court, it's also forfeited. They needed to raise it below. They did not raise it below. Um, but even if it were raised below, if it wasn't forfeited, the reformation provision has no applicability here for a couple reasons. So first, uh, what the reformation provision allows a court to do is when there's still a non-compete in place, and it's unreasonable, the court can then reform it so that going forward, it's restricting the former employee's activities while the, while the clause is still in effect. So it can never apply in a case like this, where all of the clauses expired years ago. There's nothing for the court to do. To reform it looking forward would do nothing because these clauses are no longer in effect. Moreover, the relief when, uh, reformation is sought is prospective injunctive relief. You're saying to the former employee, we understand that the clause is unreasonably broad. We're going to narrow it, and then you have to comply going forward with that narrowed clause. Uh, it does not provide, and the text of the statute specifically says, the reformation provision cannot apply to a claim of damages. You can't get damages for pre-reformation alleged, uh, violation of the clause because it wouldn't make any sense to tell an employee, uh, look, we've reformed your contract clause, and we're going to hold you liable for conduct that violated that now reformed clause before the reformation occurred. Uh, so reformation is not an option here, both as a matter of procedure based on forfeiture, but also just as a, as a basic matter of, uh, how that statutory provision, uh, works. Um, I'll, I'll address quickly the two other over, sort of, arguments they make, neither of which is based on the text of the contract. One, G Court makes an as, sort of an as applied argument that basically says, well, uh, let's look at the conduct that these employees were accused of engaging in, and then say that violated the, it could have violated a more, a narrow, more reasonable clause, but the court can't do that. A court can't rewrite the contract and then hold Amdocs and TTS liable for tortiously interfering with a rewritten contract. That's why the case is recognized that an unenforceable non-compete clause is an absolute defense to a tortious interference claim. Um, finally, they, they point to the contract that was between G Corp and TTS, uh, a business to business contract and say, well, that should mean this is reasonable. They're completely different contracts, completely different clauses. All it goes to show is that T, uh, G Corp failed to, uh, try to contract with TTS about any such limitations. Presumably G Corp could have sought to include that in its contract with TTS and it failed to do so. Now they're trying to backdoor their way into a tort claim, which is improper. Um, I, I've addressed them in my brief, but there's several additional reasons why to, uh, we've addressed them in our brief, but there's a several additional reasons why the contract, interference with contract claim fails. First, the language of the, uh, clause doesn't actually bar the former employees from becoming TTS employees. Uh, second, they presented no evidence of intentional interference on behalf of TTS or Amdocs, uh, which would require an active, some active part of them inducing a breach of the contract. The only relevant evidence in the record contradicted that. And, uh, third, there's, uh, TTS has a legal justification defense and on two of the claims statute of limitations defenses that G Corp doesn't address. All of those are independent bases to affirm summary judgment on that claim. On the, moving to the second claim, the tortious interference with prospective business relationship, uh, uh, again, the district court was correct in finding that there was no, uh, competent evidence of independently tortious conduct. To prevail on that claim, G Corp was, had to, uh, plead and prove conduct that itself would be a recognized tort. Uh, they haven't done so here. They, the only argument they advance is that it breached a fiduciary duty that was not pleaded in their complaint and they didn't present any evidence to support it. Just because G Corp and TTS had a contract does not create a fiduciary, uh, relationship between them. The language they cite actually runs in TTS's favor, not G Corp's favor. And so their fiduciary duty cannot serve as a basis for that claim. Um, again, there are several additional reasons, uh, why that claim fails. They failed to identify a prospective business relationship with a third party that allegedly was cut off from the allegedly tortious conduct. So that's another element of the claim that they can't satisfy. Um, they produced no evidence that there was a conscious desire to, to interfere with such a relationship since they never identified such a relationship. And then again, the legal justification and statute of limitations defenses apply equally to this claim as they do the tortious interference with contract claim. Um, for all those reasons, uh, the appellees would ask the court to affirm the grant of summary judgment. I'm happy to answer any questions that, that the court has. Um, but otherwise we'd rest on our briefs. All right. Thank you, Mr. Morales-Doyle. Mr. Masterson for rebuttal. Yes, Your Honor. Basically, what we're asking for in this case is an enforcement of the statutory law that's applicable to this transaction. Now, this transaction is, uh, is somewhat different from the, the sections of the covenant not to compete the law in Texas, because that usually is going to be in the context of suit against an employee. But in this case, uh, it, it really wouldn't make sense to sue the employees. We're talking about some, uh, very substantial damages from, uh, the poaching by, uh, the, this, uh, uh, the appellees, the competitors. But what I would like to do, because it's short and, and it's very pertinent, is just read to the court section 15.52, uh, as to preemption of other law. Uh, because what we're asking for is that, that the trial court follow the law that says the trial court shall reform the terms to the extent necessary. The, and what this says is the criteria for enforceability of a covenant not to compete provided by section 15.50 of this code and the procedures and remedies in an action to enforce a covenant not to compete provided by section 15.51 of this code are exclusive and preempt any other criteria for enforceability of a covenant not to compete or procedures and remedies in an action to enforce a covenant not to compete under common law or otherwise. So when they, when the trial court cites the Juliet Fowler case and the trial court says it's superseded and now the other side is trying to enforce, uh, that rule when in, in violation of, of not only, uh, the, uh, the law prior to Juliet Fowler, but also, uh, in violation of, of these three statutes, then we don't think that it is sustainable and we should have our, uh, day in court. If the courts, uh, rules that as provided by this statute, that it is an enforceable contract, then they lose the basis for their, their, uh, contention that to enforce the contract is to, uh, go against public policy. So that, that is our, uh, uh, argument and, uh, I, I think it's, uh, uh, very clear from the statutory language, uh, and that we're entitled to this and, uh, we think we're entitled to it and ask the court to reverse the trial court. Yes. And we have your argument. Thank you, Mr. Masterson. Your case is under submission. Thank you, Your Honor. Next quote here, DeWolf.